UNITED STATES of America, Appellee,

v.

Michael T. BOST, Appellant.

No. 95–3089.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 25, 1996.

Decided June 28, 1996.

A.J. Kramer, Federal Public Defender, argued the cause and filed the briefs, for appellant. Amy Seidman, Key Gardens, NY, entered an appearance.

Leanne Shaltis, Assistant United States Attorney, argued the cause, for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, and J. Patrick Rowan, Assistant United States Attorneys, were on the brief.

Before SILBERMAN, BUCKLEY, and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

Concurring opinion filed by Circuit Judge SILBERMAN.

BUCKLEY, Circuit Judge:

Appellant Michael T. Bost entered a conditional guilty plea to a charge of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), the federal "felon-in-possession" law. On appeal, Bost argues that because his civil rights had been restored by a certificate and a statute that did not restrict his right to possess a

gun, he cannot be convicted of that crime. We agree.

## I. BACKGROUND

On June 11, 1993, Bost drove his pick-up truck to the White House and asked to see the President. After ascertaining that Bost had no appointment, the Secret Service officer on duty asked Bost if he had any weapons. When he replied that he had a rifle in his truck, Bost was arrested; subsequently, on July 6, 1993, he was charged in a three-count indictment. The only issue in this appeal involves Count One, which charged Bost with violating the felon-in-possession statute.

The predicate felony upon which Count One is based is an Ohio conviction for kidnaping. In 1981, after serving the sentence for that offense, Bost was paroled to his home in North Carolina. In July 1982, the State of Ohio issued Bost a certificate entitled "Restoration to Civil Rights," which states, in pertinent part:

Having served the maximum sentence for the offense for which you were convicted, and under the authority of Sections 2961.01 and 2967.16 of the Revised Code of Ohio, the Ohio Adult Parole Authority hereby RESTORES you to the rights and privileges forfeited by your conviction; namely the right to serve on juries and to hold office of honor, trust, or profit.

Appendix at 27. Bost's right to vote was restored automatically by statute.

In a motion to dismiss the felon-in-possession charge, Bost argued that because the Ohio certificate that had restored his civil rights placed no restrictions on his right to possess a firearm, he could not be convicted for a violation of 18 U.S.C. § 922(g)(1), citing section 921(a)(20), which defines the felony convictions that are subject to section 922(g). After a hearing on February 23, 1995, the district court denied the motion. On February 28, Bost pleaded guilty to Count One, reserving under Rule 11(a)(2) of the Federal Rules of Criminal Procedure his right to appeal the denial of his motion. Counts Two and Three were dismissed pursuant to the plea agreement. Bost was sentenced to for-

ty-two months in prison, followed by three years of supervised release. This appeal followed.

## II. DISCUSSION

In 1986, Congress enacted the Firearms Owners' Protection Act ("Act"). 18 U.S.C. § 926A *et seq.* (Supp. IV 1986). The Act had the effect of revising and consolidating two preexisting felon-in-possession statutes that had overlapping provisions. *See* 18 U.S.C. § 921 & note (Supp. IV 1986). The new statute provides, in pertinent part:

It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ...

   \*      \*      \*      \*      \*      \*

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g) (1994). The phrase "crime punishable by imprisonment for a term exceeding one year" is defined in such a manner as to exclude certain categories of individuals from prosecution under section 922(g). The issue before us is whether Bost falls within that exclusion.

The relevant language of the definitional section reads as follows:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). As the Senate Committee Report expressly recognized, *see* S.Rep. No. 583, 98th Cong., 2d Sess. 7 n.16 (1984), the effect of this provision is to allow a state to determine who will be subject to federal prosecution under the Act.

It is generally agreed that the "civil rights" referred to in section 921(a)(20) are the rights to vote, to hold elective office, and to serve on a jury. *United States v. Caron,* 77 F.3d 1, 2 (1st Cir.1996); *see also United States v. Cassidy,* 899 F.2d 543, 549 (6th Cir.1990); *United States v. Thomas,* 991 F.2d 206, 212–13 (5th Cir.1993). States have adopted a "wide variety of practices" for restoring these civil rights. *Caron,* 77 F.3d at 2–3; *McGrath v. United States,* 60 F.3d 1005, 1008 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996). Some states restore civil rights by statute; others authorize officials to issue certificates of restoration to felons after a specified period; still others "restore rights in a piecemeal fashion" by a combination of statutes or by certificate and statute. *See Caron,* 77 F.3d at 3. In this case, Ohio restored Bost's civil rights in part by statute and in part by the issuance of a certificate.

The issue before us is whether, under the definition in section 921(a)(20), a defendant may be considered a convicted felon, for purposes of section 922(g), if the law in the state of conviction prohibits felons from shipping, transporting, possessing, or receiving firearms even though the statute or the procedure that restores the felon's civil rights is silent on the subject.

In cases where felons have been advised by certificate that their civil rights have been restored, our sister circuits are divided over whether courts may look beyond those certificates in order to determine whether the restoration "expressly" limited the recipient's rights with respect to firearms. Some circuits hold that section 921(a)(20) limits the inquiry to the language of the certificate. *See, e.g., United States v. Glaser,* 14 F.3d 1213, 1218 (7th Cir.1994) (where formal notice of restoration is provided, section 921(a)(20) requires courts "to look, not at the contents of the state's statute books but at the contents of the document"); *Thomas,* 991 F.2d at 213 (same); *United States v. Herron,* 45 F.3d 340, 343 (9th Cir.1995) (same). Other circuits hold that the "whole of state law" must be reviewed in order to determine whether a felon's firearms privileges are restricted. *See, e.g., Cassidy,* 899 F.2d at 549 (if civil rights restored by operation of state law "with or without a certificate or order documenting the event, we must look to the whole of state law ... to determine whether the 'convicted felon' is entitled to ... exercise [firearms] privileges"); *United States v. McLean,* 904 F.2d 216, 218 (4th Cir.1990) (eschewing reliance on language of restoration certificate and following *Cassidy*); *United States v. Burns,* 934 F.2d 1157, 1160–61 (10th Cir.1991) (looking to "whole of state law" to find firearms restrictions).

The Government urges us to adopt the latter circuits' "look to the whole of state law" approach, which, it maintains, is consistent with congressional intent as expressed in legislative history. Because an Ohio statute prohibits convicted felons from possessing firearms, the Government contends that its law, viewed as a whole, requires a finding that Bost is not exempt from prosecution under section 922(g). That approach, however, is inconsistent with the plain directive of section 921(a)(20).

■ In construing a statute, courts "must presume that a legislature says in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 252–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). In order to determine whether the restoration of a felon's civil rights will exempt him from federal restrictions on the rights to ship, transport, possess, or receive firearms, we are instructed by section 921(a)(20) to see whether "such .... restoration ... expressly" restricts such rights. In *Cassidy,* the Sixth Circuit looked beyond that language and concluded, from an examination of the section's legislative history, that

[i]t would frustrate the intent of Congress ... to focus solely upon the document transferred to the convict upon release. The intent of Congress was to give effect to state reforms with respect to the status of an ex-convict. A narrow interpretation requiring that we look only to the document, if any, evidencing a restoration of rights, would frustrate the intent of Congress that we look to the whole of state law, including state law concerning a convicted felon's firearms privileges.

899 F.2d at 548. A resort to legislative history is uncalled for, however, because the section's instructions are clear. *See Burlington N. R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859–60, 95 L.Ed.2d 404 (1987) (when language of statute is unambiguous, review of legislative history is unnecessary).

■ We reject *Cassidy*'s holding that, in applying the section, a court must look to the "whole of state law." As the Ninth Circuit stated, in a case in which all of a felon's rights were restored by certificate, that approach

> cannot [be] reconcile[d] with the language of the statute, particularly the word "such" [in the last sentence of section 921(a)(20) ]. By that word, Congress tells us what to read in order to determine whether the felon's civil rights restoration made an exception for firearms. The words "expressly provides" tell us what to look for. This plain, literal interpretation comports better with fairness than the alternative approach, by requiring the state to give the felon fair notice if his restoration of civil rights makes an exception for firearms.

*Herron,* 45 F.3d at 342–43. The Ninth Circuit's careful reading of the statute makes it clear that in order to determine whether a convicted felon falls within the exception described in section 921(a)(20), a court may look no further than the source of the restoration of his civil rights to see whether his gun-related rights have been restricted.

■ In this case, we must deal with two such sources. Section 2961.01 of Ohio's Revised Code declares that "[a] person convicted of a felony ... is incompetent to be an elector or juror, or to hold an office of honor, trust, or profit." Ohio Rev.Code Ann. § 2961.01 (Page's 1993). It then provides that "any such person ... is competent to be an elector [during the period of any grant of probation, parole, or conditional pardon] and thereafter following his final discharge." *Id.* The certificate that advised Bost of the restoration of his rights to hold office and to serve on a jury was issued pursuant to a separate statutory provision which states that

> [a] prisoner who has served the maximum term of his sentence or who has been

granted his final release by the adult parole authority shall be restored to the rights and privileges forfeited by his conviction.

*Id.* § 2967.16. A third Ohio law prohibits convicted felons from possessing, acquiring, or using firearms "[u]nless relieved from disability as provided in Section 2923.14 of the Revised Code," *id.* § 2923.13, which prescribes the procedures by which state firearm privileges may be restored. *Id.* § 2923.14.

In light of this statutory structure, the Government maintains that, even if a court is bound by the language of a certificate that restores *all* of a felon's civil rights, the one given Bost only purports to restore his rights to serve on juries and to hold office. Therefore, according to the Government, we must look to the whole of Ohio law in order to determine the status of the third fundamental right, the right to vote; and in doing so, we are required to take account not only of the statute that automatically restored Bost's right to vote, but of the one that denies him the right to possess a gun.

■ This argument fails to take account of the limits imposed by section 921(a)(20) on the scope of a court's inquiry. As the Fifth Circuit has observed, it is

> difficult to square [the Government's position] with that unambiguous language of § 921(a)(20), which declares that a conviction for which a person had civil rights restored cannot serve as the predicate for a conviction under § 922(g) "unless *such ... restoration* of civil rights *expressly provides* that the person may not ship, transport, possess or receive firearms."

*Thomas,* 991 F.2d at 213 (emphasis in original). It follows, then, that when a court finds that

> the state which obtained the underlying conviction revives essentially all civil rights of convicted felons, whether affirmatively with individualized certification *or* passively with automatic reinstatement, [the court] shall then determine whether the defendant was nevertheless *expressly* deprived of the right to possess a firearm by some provision of the restoration law or

procedure of the state of the underlying conviction.

*Id.* (emphasis in original). We are presented with a somewhat different case in that Bost's right to vote was restored by a statute, and his rights to hold office and serve on juries were restored by a certificate. Because neither imposed any restriction on his right to possess a gun, however, we need not decide whether, if his right to vote had not been restored by statute, the certificate would have constituted a sufficient "restoration of civil rights" to satisfy the requirements of section 921(a)(20). It suffices that Bost has recovered all of them through a combination of sources that do not expressly restrict his rights with respect to firearms. Accordingly, we conclude that Bost is not subject to prosecution.

In a lengthy footnote, the Government offers a novel argument for rejecting a "plain meaning" approach to the interpretation of the section. It notes, first, that Bost's certificate was issued prior to the enactment of section 921(a)(20); therefore, "at the time that appellant's rights were 'restored,' the State of Ohio was not aware that it was required to do anything more than enact a statute in order to prohibit felons from possessing guns, despite the restoration of other rights." Brief for Appellee at 14 n.9. The Government expresses the fear that a literal application of the section "would have the unfortunate effect of allowing felons who were issued parole certificates . . . prior to 1986 to be entitled to possess guns despite an express Ohio law to the contrary. . . ." *Id.* It then cites *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), for the proposition that the plain meaning of a statute should not control where its "literal application . . . will produce a result demonstrably at odds with the intentions of its drafters."

The Government overstates the case. The State of Ohio is free to arrest, convict, and jail Bost any time he is found in possession of a firearm in Ohio. The question before us is whether he is in violation of a *federal* law, and it is not self-evident that Congress would have felt a particular need to federalize Ohio's restrictions on the possession of fire-

arms. Congress, of course, could have made the Act effective only with respect to restorations occurring after the bill's enactment; but it did not do so. Indeed, it did not even accommodate a request by Senator Durenberger that the statute's effective date be delayed in order to allow states to reexamine their restoration laws in light of its provisions. *See Cassidy*, 899 F.2d at 548–49. Thus, while we award the Government an "A" for Effort in advancing this argument, we decline its invitation to ignore the statute's unambiguous instruction.

Finally, the Government argues that when a felon is given a restoration certificate that is superfluous in light of the existence of a restoration statute, that certificate need not carry a firearms restriction in order to make a felon subject to the Act. Because this issue was raised for the first time at oral argument, we need not address it. Nor need we decide whether Bost's certificate was legally necessary to restore his rights in light of section 2967.16 of Ohio's Revised Code. We are mindful, however, of Judge Easterbrook's description of section 921(a)(20) as

> an anti-mousetrapping rule. If the state sends the felon a piece of paper implying that he is no longer "convicted" and that *all* civil rights have been restored, a reservation in the corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher. The final sentence of § 921(a)(20) can not logically mean that the state may dole out an apparently-unconditional restoration of rights yet be silent so long as any musty statute withholds the right to carry guns. Then the state never would need to say a peep about guns; the statute would self-destruct. It must mean, therefore, that the state sometimes must tell the felon that under state law he is not entitled to carry guns, else § 922(g) does not apply.

*United States v. Erwin*, 902 F.2d 510, 512–13 (7th Cir.1990) (emphasis in original). This reasoning suggests that even in a case where the issuance of a certificate may be superfluous, a state that wishes its felon-in-possession law to be enforced at the federal level would be well-advised to include its firearms

restrictions in any restoration certificate it provides a convicted felon.

### III. Conclusion

The State of Ohio issued Bost a certificate that restored his right to serve on juries and to hold public office. His right to vote was automatically restored by statute. Because neither the certificate nor the statute contains any language expressly limiting his right to possess a firearm, we conclude that Bost is not subject to prosecution under section 922(g). Accordingly, Bost's conviction is vacated, and the district court is directed to grant Bost's motion to dismiss Count One of the indictment.

*So ordered.*

SILBERMAN, Circuit Judge, concurring:

I agree with the majority that the phrase "such ... restoration" should be read as "such source of restoration," and therefore if a certificate is the source of any part of the defendant's restoration of civil rights, it must contain the firearms restriction to support a conviction under 18 U.S.C. § 922(g)(1). If the source in whole or in part is a statute, however, I do not think it matters where in the state code the restriction is found. As the Seventh Circuit noted, a codifier's decisions are often unpredictable. *United States v. Erwin*, 902 F.2d 510, 513 (7th Cir.), *cert. denied*, 498 U.S. 859, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990). Accordingly, anyone required to examine a state's statutes to determine the scope of his or her restoration must exercise care that all relevant sections are consulted, just as every paragraph of the certificate must be read.