NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0426n.06

No. 07-6210

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 17, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| RANDALL THOMAS ZELLARS, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |

BEFORE: COLE, GIBBONS, Circuit Judges; and BELL, District Judge.[*]

**PER CURIAM.** Defendant-Appellant Randall Thomas Zellars appeals the order denying his motion to dismiss Count I, his conviction on Count I for possession of a firearm by a convicted felon, and his sentence on Count II for possession of body armor by a violent felon. For the following reasons, we **REVERSE** the denial of Zellars's motion to dismiss Count I, **REVERSE** his conviction on Count I, **VACATE** his sentence, and **REMAND** for resentencing on Count II.

## I. BACKGROUND

The central issue in this case concerns the impact of Zellars's prior felony conviction on the current charge of felon in possession of a firearm. Accordingly, our analysis begins with an examination of Zellars's prior felony conviction. In 1973 Zellars entered a guilty plea in the Court

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

of Common Pleas in Clinton County, Ohio, to an indictment charging him with unlawfully, maliciously, and forcibly breaking and entering Laurel Oaks Career Development Campus at night with the intent to commit larceny in violation of Ohio Rev. Code § 2907.10 (repealed eff. 01/01/1974), and unlawfully stealing property valued in excess of $60.00 in violation of Ohio Rev. Code § 2907.20 (repealed eff. 01/01/1974). Zellars received a suspended sentence and was placed on probation for three years. In 1976 Zellars was found to be in violation of the terms of his probation and was sentenced to concurrent terms of not less than six months or more than five years in the Ohio State Penitentiary. Zellars was paroled on March 4, 1977, and obtained his final release on June 26, 1978.[1]

The current charges stem from Zellars's arrest on December 31, 2006, for operating a motor vehicle under the influence of intoxicants. At the time of his arrest Zellars was discovered to be in possession of a .22 caliber revolver and ammunition. During a subsequent search of his apartment, federal agents found a second handgun, a ballistic vest, and additional ammunition.

On January 25, 2007, Zellars was charged in a three-count indictment with being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1), possession of body armor after being convicted of a crime of violence in violation of 18 U.S.C. § 931, and forfeiture of firearms and ammunition pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461. Zellars filed a motion to dismiss the indictment on the basis that his 1973 Ohio felony conviction was not a

---

[1]These dates were certified by the custodian of the Ohio Department of Rehabilitation and Correction who indicated that, in accordance with the department's ten-year retention schedule, all paper documents pertaining to Zellars' 1973 state conviction have been destroyed.

predicate offense for purposes of § 922(g)(1), and was not a crime of violence for purposes of § 931.

The district court denied his motion to dismiss. Zellars entered a guilty plea to both counts of the

indictment, reserving the right to appeal the issue of whether his 1973 conviction constitutes a

predicate felony to support his indictment under 18 U.S.C. § 922(g)(1). Zellars was sentenced to a

term of 24 months in prison on each count, to run concurrently. Zellars appeals his conviction on

Count I and his sentence on Count II.

## II. ANALYSIS

### A. Motion to Dismiss

Count I of the indictment charged Zellars with being a felon in possession of firearms and

ammunition in violation of 18 U.S.C. § 922(g)(1). Zellars moved to dismiss Count I on the basis

that his 1973 conviction was not a predicate offense for purposes of § 922(g)(1). Zellars now

appeals the district court's denial of that motion.

Section 922(g)(1) makes it unlawful for any person who has been convicted of a crime

punishable by imprisonment for a term exceeding one year to "possess in or affecting commerce, any

firearm or ammunition." 18 U.S.C. § 922(g)(1). What constitutes a "crime punishable by

imprisonment for a term exceeding one year" is defined in accordance with the law of the

jurisdiction in which the proceedings were held. 18 U.S.C. § 921(a)(20). Certain prior convictions

are excluded from this definition:

> Any conviction which has been expunged, or set aside or for which a person has been
> pardoned or has had civil rights restored shall not be considered a conviction for
> purposes of this chapter, unless such pardon, expungement, or restoration of civil
> rights expressly provides that the person may not ship, transport, possess, or receive
> firearms.

3

Id. Accordingly, "[i]f state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, that felon is not subject to federal firearms disabilities." *United States v. Cassidy*, 899 F.2d 543, 546 (6th Cir. 1990). We look to the whole of state law to determine whether a convicted felon has had his civil rights restored and to determine whether he is entitled to exercise the privilege of possessing a firearm. *Id*. at 549. Although state law determines the restoration of civil rights, federal law governs the interpretation of the "unless" clause ("unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.") *Caron v. United States*, 524 U.S. 308, 316 (1998).

Under Ohio law, convicted felons lose certain rights and privileges, including their rights to possess firearms, to vote, to be a juror, and to hold office. Ohio Rev. Code §§ 2923.13 (weapons disability), 2961.01 (civil rights of convicted felons). The right to vote is automatically restored when a convicted felon is released from prison. Ohio Rev. Code § 2961.01(A)(2). However, other rights and privileges forfeited by a conviction are restored only upon completion of the entire prison term or on being granted a final release by the adult parole authority. Ohio Rev. Code § 2967.16(C)(1).[2] In the case of a person convicted of a "felony offense of violence," Ohio law

---

[2]Ohio Rev. Code § 2967.16 provides that the following prisoners shall be restored to the rights and privileges forfeited by a conviction:

> (a) A prisoner who has served the entire prison term that comprises or is part of the prisoner's sentence and has not been placed under any post-release control sanctions;
> (b) A prisoner who has been granted a final release by the adult parole authority pursuant to division (A) or (B) of this section.

Ohio Rev. Code § 2967.16(C)(1).

> (c) A person who has completed the period of a community control sanction or combination

(continued...)

4

imposes an additional restriction against having firearms. Ohio Rev. Code § 2923.13. A person

convicted of a "felony offense of violence" may apply for relief from most weapons prohibitions,

but may not apply for relief from the prohibition against acquiring or possessing dangerous ordnance.

Ohio Rev. Code §§ 2923.13(A)(2), 2923.14(F)(3). "[A] state weapons limitation on an offender

activates the uniform federal ban on possessing any firearms at all." *Caron*, 524 U.S. at 315-16.

Accordingly, if Zellars was convicted of a violent felony in 1973, he would not have his civil rights

restored as a matter of federal law.

The district court denied Zellars's motion to dismiss Count I based on its conclusion that

although Zellars's 1973 conviction was not a felony of violence, Zellars failed to sustain his burden

of establishing that his civil rights had been fully restored.

A district court's factual findings are reviewed for clear error, and its credibility-based

findings "can virtually never be clear error." *Anderson v. Bessemer City*, 470 U.S. 564, 573-75

(1985). We apply *de novo* review to a district court's denial of a motion to dismiss on legal grounds.

*United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008).

Zellars contends that it is not necessary to review the district court's factual findings because

his civil rights were restored by operation of Ohio law.

The district court held that the restoration of Zellars's civil rights after his 1973 conviction

was governed by Ohio Rev. Code § 2967.16. According to the district court, in order to show that

---

[2](...continued)
of community control sanctions, as defined in Section 2929.01 of the Revised Code, that was
imposed by the sentencing court.

5

his civil rights were restored, Zellars was required to show that the Ohio Adult Parole Authority

exercised its discretionary authority to enter a final release. The district court determined that Zellars

failed to produce sufficient evidence that his civil rights had been restored because he was unable

to produce a certificate of restoration from the Adult Parole Authority, his testimony regarding his

receipt of a certificate lacked credibility, and his final release from incarceration did not satisfy the

requirement of a final release from the Ohio Adult Parole Authority.

Upon review we are persuaded that the district court erred in its interpretation and application

of § 2967.16. In support of its conclusion that there could be no restoration of civil rights in the

absence of a certificate, the district court focused on the discretionary language in the first paragraph

of § 2967.16[3] and on cases from other circuits. *See United States v. Chenowith*, 459 F.3d 635, 637

---

[3]At the time Zellars was released from parole in 1978, Ohio Rev. Code § 2967 provided as follows:

> When a paroled prisoner has faithfully performed the conditions and obligations of his parole and has obeyed the rules and regulations adopted by the adult parole authority that apply to him, the authority upon the recommendation of the superintendent of parole supervision **may enter upon its minutes a final release and thereupon shall issue to the paroled prisoner a certificate of final release**, but no such release shall be granted earlier than one year after the prisoner is released from the institution on parole unless his maximum sentence has expired prior thereto, and in the case of a prisoner whose minimum sentence is life imprisonment, no such release shall be granted earlier than five years after the prisoner is released from the institution on parole.

> A prisoner who has served the maximum term of his sentence or who has been granted his final release by the adult parole authority **shall** be restored to the rights and privileges forfeited by his conviction.

Ohio Rev. Code § 2967.16 (West 1993) (eff. Nov. 1, 1965) (emphasis added).

(5th Cir. 2006) (holding that the defendant's civil rights were restored by a final-release-and-restoration certificate pursuant to § 2967.16, and not by operation of law); *United States v. Bost*, 87 F.3d 1333, 1334 (D.C. Cir. 1996) (noting that because the defendant's rights were restored by both certificate and operation of law, it was not necessary to decide whether a certificate was necessary to restore rights because his rights to own a firearm were not restricted). The district court failed to consider the second paragraph of § 2967.16 which provides that the rights forfeited by a conviction "shall" be restored when a prisoner has served the maximum term of his sentence or has been granted his final release by the Adult Parole Authority. Because the defendants in *Chenowith* and *Bost* had received a certificate, neither of these cases made any findings on the operation of the second paragraph of § 2967.16.

The evidence produced in this case reflects that the State of Ohio Department of Rehabilitation and Correction certified that Zellars was placed on parole on March 4, 1977, and that he obtained his final release on June 26, 1979. Contrary to the district court's findings, this evidence indicates that Zellars received this final release not from incarceration, but from parole. In addition, there is no question that Zellars completed the maximum term of his sentence. Accordingly, the restoration of Zellars's civil rights is governed by the mandatory language in the second paragraph of § 2967.16 rather than the discretionary language in the first paragraph. Zellars's civil rights were restored as a matter of law upon completion of his sentence and/or upon final release. The restoration of his civil rights was automatic. It did not depend on his obtaining a certificate of final release from the parole authority.

The government does not challenge Zellars's analysis regarding the automatic restoration of

rights under the second paragraph of § 2967.16. Instead, the government contends that, contrary to the district court's finding, Zellars's 1973 conviction was a crime of violence.

Ohio law provides that a person who has been convicted of any "felony offense of violence" cannot apply for relief from the prohibition against acquiring or possessing a dangerous ordnance. Ohio Rev. Code §§ 2923.13(A)(1), 2923.14(F)(3). In other words, Ohio does not restore all firearms-related rights to an individual who was convicted of a violent felony. Accordingly, if Zellars was convicted of a violent felony, he would be subject to the federal ban on possessing any firearms at all.

Ohio law defines an offense of violence as any one of several listed offenses, their substantial equivalents, or any other intentional offense involving physical harm or a risk of serious physical harm to persons. Ohio Rev. Code § 2901.01(A)(9).

Zellars was convicted in 1973 for breaking and entering an uninhabited dwelling at night in violation of Ohio Rev. Code § 2907.10, a statute that was repealed in 1974. Because the statute was no longer in force when Zellars was found to have violated probation and was sentenced to prison, the state court sentenced Zellars under the lesser included penalties imposed under Ohio Rev. Code § 2911.13, breaking and entering. The § 2911.13 offense of breaking and entering is not one of the listed offenses in § 2901.01(A)(9)'s definition of offenses of violence. The government contends that Zellars's conviction nevertheless falls within the definition of an offense of violence because it is the substantial equivalent of one of the listed offenses, and involved a risk of serious physical harm to persons. *See* Ohio Rev. Code § 2901.01(A)(9)(b).

The government contends that Zellars's conviction should be compared to § 2911.12,

burglary, which is listed as an offense of violence in § 2901.01(A)(9)(a). In support of this proposition the government notes that under the Ohio Revised Code, for an act to qualify as an "offense of violence," there must be more than a remote possibility but less than a strong possibility of violence occurring. *See* Ohio Rev. Code § 2901.01(A)(7) (defining "risk" as "a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist"); Ohio Rev. Code § 2901.01(A)(8) (defining "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist"). The government cites a number of federal cases that have held that the burglary of a non-dwelling may be a crime of violence based on the risk of harm to persons. *See United States v. Wilson*, 168 F.3d 916, 928-29 (6th Cir. 1999) (noting the possibility that the burglary of a non-dwelling may be a crime of violence); *United States v. Hascall*, 76 F.3d 902, 904 (8th Cir. 1996) (noting that second-degree burglary of a commercial building involves conduct that presents a serious potential risk of physical injury); *United States v. Bentley*, 29 F.3d 1073, 1077 (6th Cir. 1994) (holding that breaking and entering an unoccupied structure in violation of § 2911.13(A) is a violent felony for purposes of § 924(e)).

As Zellars correctly points out, it is Ohio law, not federal law, that determines the restoration of civil rights. *Caron*, 524 U.S. at 316. Accordingly, the relevant consideration is whether Ohio considers the crime to be a crime of violence. At least one Ohio case has squarely held that breaking and entering an unoccupied building under § 2911.13(A) is not a crime of violence. *Ohio v. Mosely*, 624 N.E.2d 297, 301 (Ohio Ct. App. 1993). Although the government contends that there was a possibility that individuals might have been in the building, there are no facts of record to support

9

such a finding. Accordingly, we do not adopt the government's argument that Zellars's prior felony was a crime of violence.

We conclude that Zellars's 1973 conviction was not for a crime of violence and that his civil rights were restored by operation of law when he completed his sentence and received a final release. Accordingly, it was error for the district court to deny Zellars's motion to dismiss Count I, and his conviction on Count I must be reversed.

### B. Sentence on Count II

The Court sentenced Zellars to concurrent terms of 24 months of imprisonment on Counts I and II. Zellars appeals his sentence on Count II because he contends that the sentence is in effect an unnoticed upward variance from the advisory guideline range. The government agrees that if the Court remands to dismiss Zellars's firearm conviction, Zellars should be resentenced on Count II because the advisory guidelines penalty for the separate offense could be different.

We review a district court's sentencing determination for procedural and substantive reasonableness, using a deferential abuse-of-discretion standard. *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009) (citing *Gall v. United States*, --- U.S. ----, 128 S.Ct. 586, 594 (2007)). "A sentence is procedurally unreasonable if a district court commits a significant procedural error, 'such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Id*. (quoting *Gall*, 128 S.Ct. at 597).

The district court determined that Zellers's adjusted offense level for Count I was 16, and

that his adjusted offense level for Count II was 12. The district court grouped the two counts together and applied the higher of the two offense levels which was level 16, which resulted in an advisory guideline sentence of 18-24 months for the two counts grouped together. The district court sentenced Zellars to 24 months on each count, to run concurrently.

The district court's sentencing guideline calculation was not procedurally unreasonable based upon grouping the two counts together. However, because we find that the district court should have dismissed Count I, the higher offense level from Count I cannot be used in calculating Zellars's sentence on Count II. The guidelines range must be recalculated based upon Count II standing alone. Accordingly, we must vacate Zellars's sentence on Count II and remand for resentencing.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the denial of Zellars's motion to dismiss Count I, **REVERSE** his conviction on Count I, **VACATE** his sentence, and **REMAND** for resentencing on Count II.